# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| SHEILA CLARKE McCREADY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 01-2219 (RMC) |
| | ) | |
| R. JAMES NICHOLSON, Secretary, | ) | |
| Department of Veterans Affairs, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OPINION

On remand from the D.C. Circuit[1] and at the invitation of this Court, the Defendant filed a motion for partial summary judgment in this case arising under the Privacy Act, 5 U.S.C.§ 552a.  *See* Def.'s Mem. in Supp. of Mot. for Partial Summ. J. ("Def.'s Mem.") [Dkt. #78].  The motion addresses only Counts VI, IX and X of the Amended Complaint insofar as they relate to the alleged distribution of specific Inspector General audit reports beyond the Office of the Inspector General ("OIG") in the Department of Veterans Affairs ("VA").  The rest of the case will require some discovery before its resolution and the Court aims here to clear out the underbrush.  The Plaintiff[2] opposes the motion, arguing that she needs discovery. *See* Pl.'s Opp. to Def.'s Mot. for Partial Summ. J. ("Pl.'s Opp.") [Dkt. #86].  The Court declines to order discovery on a simple matter

---

[1]  *See McCready v. Nicholson*, 465 F.3d 1 (D.C. Cir. 2006).

[2]  Plaintiffs were originally Sheila and Robert McCready, wife and husband.  Mr. McCready has conceded that his cause of action is not viable. *See* Pls.' Response to Order to Show Cause [Dkt. #91].  This decision is limited to Ms. McCready.

over which there is no genuine issue of material dispute.[3]   It will grant the motion for partial

summary judgment.

## I. BACKGROUND FACTS

Plaintiff Sheila Clarke McCready was the Principal Deputy Assistant Secretary

("PDAS") for the Office of Congressional Affairs ("OCA") in the United States Department of

Veterans Affairs ("VA") in June 1999.  *See* Am. Compl. ¶ 1.  At that time, the VA Inspector General

began an audit of the OCA in response to a confidential complaint of fiscal mismanagement and

operational abuse.  *See McCready,* 465 F.3d at  4.  As PDAS, Ms. McCready was responsible for

supervising and managing all operations and personnel in that Office and the audit, therefore,

concentrated on her activities.  *See* Def.'s Statement of Material Facts as to Which There is No

Genuine Issue ("Def.'s Facts") ¶ 2.  The alleged improprieties involved salary and expense account

over-expenditures, overtime abuses, and fiscal mismanagement in the OCA.  *See* Def.'s Facts ¶ 6.

On October 21, 1999, the Secretary of the VA relieved Ms. McCready of her

---

[3] Plaintiff's counsel wasted his and the Court's time advancing supposed disagreements with Defendant's Statement of Material Facts.  *See* Pl.'s Opp., Statement of Genuine Issues of Material Fact; *see also* Pl.'s Amended Statement of Genuine Issues of Material Fact ("Pl.'s Facts")  [Dkt. #93].  For instance, counsel refused to agree with the Defendant's first statement, allegedly because Plaintiff needed discovery, even though the information came directly from the Circuit Court's Opinion. *Id*. ¶ 1.  Plaintiff "contests" whether the IG performed a "true audit," which is not relevant. *Id*. ¶ 6. The only germane disagreements concern the Defendant's statements 16 and 17, which Plaintiff's counsel "contests."  In the initial Statement of Genuine Issues of Material Fact, Plaintiff offered no facts of her own or any basis on which her contest rested.  *See* Pl.'s Opp., Statement of Genuine Issues of Material Fact.  After objection by the Defendant, Plaintiff in an effort to cure the insufficiency of her responses, filed an Amended Statement of Genuine Issues of Material Fact.  *See* [Dkt. #93].  While this submission was much the same as the first, it did more fully elucidate Plaintiff's grounds for dispute with respect to statements 16 and 17.  As such, the Plaintiff's motion to File Amended Statement of Genuine Issues of Material Fact [Dkt. #93] will be granted.  The Amended Statement of Genuine Issues of Material Fact is accepted for filing, and the Defendant's Motion to Strike the Amended Statement of Genuine Issues of Material Fact [Dkt. #96] will be denied.

responsibilities and moved[4] her to the Office of the Secretary.  *See McCready*, 465 F.3d at 4.  She was later moved, on November 22, 1999, to the Office of the Under Secretary for Veterans Health Administration.  *Id.*

The Inspector General ("IG") produced a Draft Audit Report ("Draft") to the Assistant Secretary for Policy and Planning on October 29, 1999.  *Id.*; Def.'s Facts ¶ 4.  A Final Audit Report ("Final") issued on January 7, 2000, and was sent to various VA officials, the Office of Management and Budget, the General Accounting Office and various congressional committees. *Id.*  The IG issued an Addendum Audit Report ("Addendum") on March 22, 2000, which was sent to the same recipients (collectively the ("IG Reports").  *Id.*  The IG posted the Final and Addendum reports on its website in spring 2000. *Id.*

The Secretary of the VA asked the General Counsel's Office and the Office of the Assistant Secretary for Human Resources and Administration to determine whether the IG Reports "provide[] a basis for an adverse or other action against" Ms. McCready.  *Id.* at 5.  The General Counsel and the Assistant Secretary reviewed the IG Reports and Ms. McCready's responses and made a recommendation to the Secretary on July 17, 2000 ("GC/HR Review").  *Id.*  "After reviewing [Ms. McCready's] point-by-point response to the audit," the Secretary "concluded that no disciplinary action is warranted."  *Id.*  He so advised Ms. McCready and informed her that "[t]he matter is closed."  *Id.*

On February 8, 2001, Ms. McCready asked the IG to correct several perceived errors in the Final and Addendum reports, expunge the entire reports in light of those perceived errors, or,

---

[4]  Ms. McCready insists that she was detailed to the position and not reassigned, as the Defendant states.  The difference is irrelevant.

in the alternative, incorporate her response. *See* Def.'s Facts ¶ 9. The IG denied the request for several reasons, including that the IG Reports were not maintained in a Privacy Act system of records so that the provisions of the Privacy Act upon which Ms. McCready relied did not apply. *Id*. She appealed this decision to the VA's General Counsel. *Id*. ¶ 10.

On March 29, 2001, again relying on the Privacy Act, Ms. McCready asked the IG to release various documents related to the audit. *Id*. ¶ 11. The IG responded that "records pertaining to [Ms. McCready] are not maintained in a Privacy Act system of records" and "therefore, we are processing [the] letter as a [Freedom of Information Act ("FOIA"), 5 U.S.C. § 552] request." *Id*. Ms. McCready does not complain here of the change.

The IG Reports contained a distribution list which identified the eight offices to which the Final and Addendum reports were distributed: the Secretary's immediate office, Assistant Secretary for Financial Management, Assistant Secretary for Human Resources and Administration, Assistant Secretary for Planning and Analysis, General Counsel, Assistant Secretary for Public and Intergovernmental Affairs, Deputy Assistant Secretary for Public Affairs, and the Assistant Secretary for Congressional and Legislative Affairs. *See id*. ¶ 14; *see also* Pl.'s Facts ¶ 14. One reason for the Circuit's remand of this case was to allow the record to be developed as to whether any of these Offices maintains the IG Reports in a Privacy Act system of records. *See McCready*, 465 F.3d at 15. Ms. McCready had not contacted any of the relevant Offices until March 2007, when she wrote to each and asked that the IG Reports be amended. *See* Def.'s Facts 13-14; *see also* Pl.'s Facts 13-14. Only the Office of the General Counsel, the Office of the Secretary, and the Office of Human Resources still have copies of the IG Reports. *See* Def.'s Facts; *see also* Def.'s Supp. Decls. [Dkt. #100].

## II.  LEGAL STANDARDS

Summary judgment is appropriate when the record shows that no genuine issue exists as to any material fact and the moving party is entitled to judgment as a matter of law.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Summary judgment is not a "disfavored legal shortcut[;]" rather, it is a reasoned and careful way to resolve cases fairly and expeditiously.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).  In determining whether a genuine issue of material fact exists, the court must view all facts and reasonable inferences in the light most favorable to the non-moving party.  *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Tao v. Freeh*, 27 F.3d 635, 638 (D.C. Cir. 1994).  Any factual dispute must be capable of affecting the substantive outcome of the case to be "material" and "genuine."  *See Anderson*, 477 U.S. at 247-48; *Laningham v. United States Navy*, 813 F.2d 1236, 1242-43 (D.C. Cir. 1987).  A party opposing summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial."  *Anderson*, 477 U.S. at 248.

## III.  STATUTORY BACKGROUND

The Privacy Act, 5 U.S.C. § 552a, seeks "to protect the privacy of individuals identified in information systems maintained by Federal agencies," Pub. L. No. 93-579, § 2(a)(5), 88 Stat. 1896, 1896 (1974), because such privacy "is directly affected by the collection, maintenance, use, and dissemination or personal information by Federal agencies," *id.* § 2(a)(1).  The Act "represents the compromise reached by Congress between a citizen's right to correct inaccurate records and the government's need to assemble critical information for responsible employment decision making." *Dickson v. Office of Pers. Mgmt.*, 828 F.2d 32, 40 (D.C. Cir. 1987).  In furtherance of those goals, the Privacy Act "'gives agencies detailed instructions for managing their

records and provides for various sorts of civil relief to individuals aggrieved by failures on the Government's part to comply with the requirements.'" *See McCready*, 465 F.3d at 7 (citing *Doe v. Chao*, 540 U.S. 614, 618 (2004)). The Privacy Act "safeguards the public from unwanted collection, maintenance, use and dissemination of personal information contained in agency records . . . by allowing an individual to participate in ensuring that his records are accurate and properly used." *Henke v. Dep't of Commerce*, 83 F.3d 1453, 1456 (D.C. Cir. 1996) (citations omitted). "To that end, the Act requires any agency which maintains a 'system of records' to publish at least annually a statement in the Federal Register describing that system." *Id.*; 5 U.S.C. §§ 552a(e)(4)(A)-(I).

Under subsection (b) of the Act, 5 U.S.C. § 552a(b), "agencies may not disclose any record which is contained in a system of records" unless certain exceptions apply. *See* 5 U.S.C. § 552a(b). Even where an agency makes a permissible disclosure from a system of records, it must "keep an accurate accounting" of its disclosure. *See* 5 U.S.C. § 552a(c).

The Privacy Act ensures that an individual can access his or her records and request amendment of those records to correct any inaccuracies. 5 U.S.C. § 552a(d)(1)-(3). A civil action is available to correct an inaccurate record that the agency has refused to amend. 5 U.S.C. § 552a(g)(1)(A). Only records[5] that are maintained within a "system of records" are subject to amendment under subsection (g)(1)(A). *Henke*, 83 F.3d at 1459 ("[T]he determination that a system of records exists triggers virtually all of the other substantive provisions of the Privacy Act, such as an individual's right . . . to request amendment of her records."). The Privacy Act defines "system

---

[5] "[T]o be a 'record,' an item must contain 'information that actually describes the person in some way.' *Tobey v. NLRB*, 40 F.3d, 469, 472 (D.C. Cir. 1994). The National Archives and Records Administration ("NARA") further defines federal records and specifies that "extra copies of documents preserved only for convenience of reference . . . are not included" within the definition. 44 U.S.C. § 3301.

of records" to mean "a group of any records under the control of any agency from which information is retrieved[6] by the name of the individual or by some identifying number, symbol, or other identifying particular assigned to the individual." 5 U.S.C. § 552a(a)(5). "[G]enerally speaking, the Privacy Act allows for correction of facts but not correction of opinions or judgments." *McCready*, 465 F.3d at 19.

An individual may also bring a civil suit based on an adverse determination made as a result of an inaccurate record. *See* 5 U.S.C. § 552a(g)(1)(C). The Privacy Act provides for a civil action when an agency

> fails to maintain any record concerning any individual with such accuracy, relevance, timeliness, and completeness as is necessary to assure fairness in any determination relating to the qualifications, character, rights, or opportunities of, or benefits to the individual that may be made on the basis of such record, and consequently a determination is made which is adverse to the individual.

5 U.S.C. § 552a(g)(1)(C). A plaintiff prevails on subsection (g)(1)(C) claims by showing that "(1) [she] has been aggrieved by an adverse determination; (2) the [agency] failed to maintain [her] records with the degree of accuracy necessary to assure fairness in the determination; [and] (3) the [agency's] reliance on the inaccurate records was the proximate cause of the adverse determination."[7]

---

[6] The key limitation in the Act's definition of "system of records" is its use of "*retrieved*." *McCready*, 465 F.3d at 9 (emphasis in original). "'Retrieval capability is not sufficient to create a system of records'; the agency must in practice retrieve information by personal identifier." *McCready*, 465 F.3d at 17 (*quoting Maydak v. United States*, 363 F.3d 512, 520 (D.C. Cir. 2004) (*quoting Henke*, 83 F.3d at 1460-61)). "Given the statutory language 'is retrieved,' the agency's actual retrieval practice and policies' are what matter." *Lee v. Geren*, 480 F. Supp. 2d 198, 207 (D.D.C. 2007) (citing *Henke*, 83 F.3d at 1460-61)); *see also McCready*, 465 F.3d at 13 (noting that "the 'practice of retrieval by name or other personal identifier must be an *agency* practice to create a system of records and not a "practice" by those outside the agency' ")

[7] "[T]he text of the statute conditions relief upon a concrete, adverse determination." *McCready*, 465 F.3d at 12.

*Deters v. U.S. Parole Comm'n*, 85 F.3d 655, 657 (D.C. Cir. 1996); *accord McCready*, 465 F.3d at 10.  Additionally, if "the court determines that the agency acted in a manner which was intentional or willful," it can award the plaintiff actual or statutory damages, costs, and attorney fees. 5 U.S.C. § 552a(g)(4).

## IV.  ANALYSIS

The issue before the Court at the moment is a narrow one: did the Offices on the distribution lists of the Final and Addendum reports maintain any copies of either or both IG Reports in a system of records?  *See McCready*, 465 F.3d at 12 (noting the question of "whether several other offices of the VA maintain the Inspector General's Reports in a system of records").

The heart of the Privacy Act is its assurance to individuals that if an agency maintains a system of records, it shall, upon request, permit an individual to review the record and have copies made; request amendment of a record pertaining to her; appeal any refusal to amend an offending record; allow the individual to file a concise statement setting forth her disagreement if, after an appeal, an agency head still refuses to amend a record; and provide a copy of the individual's statement of disagreement if the disputed portion of the record is thereafter disclosed.  *See* 5 U.S.C. § 552a(d).  However, the right of an individual to access records does not extend to litigation files. *See* 5 U.S.C. § 552a(d)(5) ("nothing in this section shall allow an individual access to any information compiled in reasonable anticipation of a civil action or proceeding").

### A.  Systems of Records in the Various Offices

When this case was first before this Court, the Defendant had provided no evidence addressing whether the Offices set out in the distribution lists maintain the Final and Addendum reports within a system of records.  It has corrected that oversight on remand by submitting the

declarations of Sally L. Wallace, Associate Deputy Assistant Secretary, Office E-Government and Records Management, in the Office of Assistant Secretary for Information and Technology; Kenneth M. Greenberg, Executive Secretary for the Department of Veterans Affairs; Miriam Smith, Staff Assistant in the Office of the Assistant Secretary for Management; Larry Ables, Supervisory Human Resources Specialist in the Office of the Assistant Secretary for Human Resources & Administration; Susan Sokoll, Records Manager for Information, Professional Staff Group VI, Office of General Counsel; Joseph W. Salvatore, program analyst in the Office of Policy and Planning; Judith Sterne, Program Analyst in the Office of Congressional and Legislative Affairs; and Robert Klear, Senior Communications Advisor in the Office of the Assistant Secretary for Public and Intergovernmental Affairs.  *See* Def.'s Mem., Attached Exs.  After complete briefing on the partial motion for summary judgment, oral argument on the motion, and the submission of supplemental declarations and responses,[8] the Court finds that there are ample detailed and non-conclusory facts on which a decision can be made.  As noted earlier, *see supra* n. 3, Ms. McCready "contests" some of the facts on which the Defendant relies although she has proffered no evidence to the contrary.  She continues to seek discovery on these points.  "But given the information McCready already received from [the declarations and supplemental declarations], the burden McCready's request would place on the VA, and McCready's failure to make a sufficient showing of what specifically VA could further disclose," *McCready,* 465 F.3d at 13, about the maintenance of the Final and Addendum reports in the various VA Offices, the Court finds that discovery is not

---

[8] At the Court's request, the parties submitted further declarations and responses to elucidate whether either or both of the IG reports were contained in a system of records as defined by the Privacy Act. *See* [Dkt. ##100 & 101].

necessary or appropriate and denies the motion for discovery.[9]

From the Declarations, we learn that copies of the Final and Addendum reports were found in three Offices.  (1) They "were retained in a safe in the Executive Secretariat office as extra copies."  Def.'s Mem., Greenberg Decl. ¶ 4.  These were just "loose materials in the safe."  *Id.*  (2) The Office of the Assistant Secretary for Human Resources and Administration ("HR") found  "a folder with the name Sheila McCready" that contained the two IG reports.  Def.'s Mem, Ables Decl. ¶ 3.  The folder was in among papers in three boxes left by Robert Clayton, former Director of Employee Relations, who had worked on Ms. McCready's case.  *Id.*  Mr. Ables reports that "[m]y office considers these files to be the reference and convenience papers used by Mr. Clayton in working on Ms. McCready's case. . . . Without knowing that Robert Clayton had worked on the case of Ms. McCready and had boxes of documents, there would have been no way to find the two reports."  *Id.* ¶ 4.  (3) Finally, the Office of General Counsel ("OGC") maintains three case files on litigated cases.  Def.'s Mem., Sokoll Decl. ¶ 3.  Case files are "indexed, and retrieved by the case name. [They] contain the complete working papers of the assigned attorney, related correspondence, court pleadings, motions, and associated matters, including staff recommendations to management concerning options and possible defenses . . . ."  *Id.* ¶ 5. When this Court granted the Defendant's

---

[9]  Ms. McCready complains that "[n]o one searched any systems of records maintained by HR," or Office of Personnel Management systems, or the EDMS/WebCIMS, or the approximately "50 [systems of records] pending in various stages of development."  Pl.'s Opp. at 12.  She misperceives the status of the case.  The D.C. Circuit remanded, in relevant part, so that the record could be developed as to whether any of the Offices on the distribution lists of the Final and Addendum reports maintain either or both reports in a system of records to which the Privacy Act would apply.  "Because McCready directed her request for access and amendment of the Inspector General's Reports to the Office of the Inspector General and appealed that request, the District Court correctly concluded that Count I is limited to the Inspector General's Office [and noted recipients of the IG reports] and further discovery as to the activities of other parts of the VA would be irrelevant."  *McCready*, 465 F.3d at 14-15.

motion for summary judgment, the files on this case were closed. *Id.* ¶ 6. A new file was opened when Ms. McCready filed an appeal. *Id.* Several boxes of litigation files that have been closed are at the Federal Records Center awaiting destruction, including those relating to this case before the appeal. *Id.* ¶ 8. Ms. Sokoll did not recall the files from the Federal Records Center so she cannot say with certainty that they contain the Final and Addendum reports but she would expect both reports to be there, since they are one of the focuses of the lawsuit. *Id.* ¶ 9. She did search "Individual Correspondence Records" and found a file under Ms. McCready's name but it did not contain the two IG reports.[10] *Id.* ¶ 11.

None of the other Offices found the Final or Addendum reports in any system of records or other files. The Office of Congressional and Legislative Affairs has no Privacy Act systems of records but does have reference copies of records found elsewhere in systems of records. Judith Sterne of that Office looked in an informal personnel file for Ms. McCready, created because she is a past employee of that Office, "but the reports were not there. The skeleton personnel file is the only OCLA file that is retrieved by Ms. McCready's name or other personal identifier." Def.'s Mem., Sterne Decl. ¶ 4. Similarly, the Office of the Assistant Secretary for Public and Intergovernmental Affairs, including the Deputy Assistant Secretary for Public Affairs, maintains no system of records; a search of their correspondence, publications, history files "and all other places and files where copies of those requested reports are likely to be located" turned up nothing. Def.'s Mem., Klear Decl. ¶ 4. The Office of the Assistant Secretary for Management has no Privacy

---

[10] Ms. Sokoll did not search two other systems of records, deeming it highly unlikely that the Final or Addendum reports would be there. These were the "Current and Former Accredited Representative, Claim Agent, and Representative and Claims Agent Applicant and Rejected Applicant Records" and the "Claimant Private Relief Legislative Name Files."

Act system of records in the Office and has no copy of either the Final or Addendum reports.  Def.'s

Mem., Smith Decl. ¶¶ 2, 4.  The Office of Policy and Planning ("OPP") maintains five systems of

records:  "Veterans, Dependents of Veterans, and VA Beneficiary Survey Records;" "Police and

Security Records-VA;" "Health Program Evaluation-VA;" "Shipboard Hazard and Defense

Integrated Database-VA; and "Non-Health Data Analyses and Protections for VA Policy and

Planning - VA."  Def.'s Mem., Salvatore Decl. ¶ 2.  All OPP managers responded negatively to an

e-mail request regarding their respective staff's possession of the two OIG reports in systems of

records maintained by OPP.  *Id.* ¶ 4.  An additional physical review of "selected offices and file

cabinets where OIG reports would be maintained" was equally unavailing.  *Id.*

> Ms. McCready challenges the adequacy of these searches for a variety of reasons:

>> (a) several offices identified systems of records where the
>> OIG Reports may be contained; (b) there are other existing
>> systems of records that no one claims to have reviewed; (c)
>> there are files containing the OIG Reports that may
>> constitute systems of records; (d) failed [sic] to search for
>> information that would have indicated whether the OIG
>> Reports were in any system of records at any relevant time
>> in the past; and (e) the VA failed to use consistent and
>> reliable methods in its search to ensure a complete and
>> accurate search.

Pl.'s Facts ¶ 16.  Expanding on this list, she complains that Mr. Greenberg did not look into the

Department's electronic tracking system, WebCIMS (formerly known as the electronic document

management system ("EDMS")).  Mr. Greenberg declares that "[w]hen sensitive information is

received within the Executive Secretariat, the actual documents are hand carried to the Chief of

Staff's office for the review of the Chief of Staff and/or Deputy Chief of Staff.  No part of a sensitive

document is scanned into WebCIMS, and minimal, non-sensitive information may be entered into

this system for tracking purposes."  Def.'s Mem., Greenberg Decl. ¶ 3.  Mr. Greenberg did not state

whether the OIG Reports are tracked in WebCIMS by some identifier that might pertain to Ms.

McCready, in the way that the EDMS entry for the Powell Memorandum contained the entry "PDAS

for OCA", which the Circuit Court of Appeals found sufficient to identify Ms. McCready.

At oral argument the Court requested that a supplemental declaration addressing this

issue be filed.  The Defendant complied with the Court's request.  *See* Supp. Decls. [Dkt.#100]. Mr.

Greenberg asked Ms. Belinda Carrington to perform a search of the EDMS/WebCIMS for the OIG

reports.  *See id*., Carrington Decl. & Greenberg Decl.  A search was conducted of folders and OIG

reports using Ms. McCready's name or former position title; no OIG reports were located. *Id*.,

Carrington Decl.  ¶¶ 4-10. Ms. McCready again says that the search was too limited and made

"without any consideration of the possibility that the OIG Reports might be retrieved from the

WebCIMS using a different personal identifier for Ms. McCready."  *See* Pl.'s Response to Decls.

[Dkt. #101] at 3.  The Court thinks that Mr. Greenberg's directions and Ms. Carrington's search were

reasonable, but out of an abundance of caution will direct the Plaintiff to submit a list of reasonable

search terms to the Defendant.  The Defendant will file a declaration regarding the result of the

electronic file search using these search terms, and the Court will then rule on this aspect of the

partial motion for summary judgment.

Ms. McCready also complains that some of the declarants have only recently joined

their current offices and have no personal knowledge of where the OIG Reports may have been filed

at relevant times in the past.  Pl.'s Facts ¶ 16d.  The seniority of the declarants is irrelevant:  what

matters is whether any of the Offices on the distribution lists for the Final and Addendum reports

maintains a system of records and, if so, whether those reports can be found in such systems.  The

Court finds that the searches performed in the relevant offices were reasonable, and the declarations submitted by the declarants sufficient.

Finally, Ms. McCready argues that the copies of the OIG Reports in the safe of the Executive Secretariat and in boxes in HR may have been in a system of records covered by the Privacy Act. *See* Pl.'s Facts ¶ 17. She notes that the papers are in the possession of the VA; the agency was able to locate both files; and at least some of the files in the boxes in HR were marked with the names of individual employees. *Id.* These arguments are unavailing. There is no agency practice of *retrieving* files from either Mr. Clayton's old papers or the safe of the Executive Secretariat by Ms. McCready's name or other identifying moniker. *See McCready*, 465 F.3d at 17 (*quoting Maydak v. United States*, 363 F.3d 512, 520 (D.C. Cir. 2004) (*quoting Henke*, 83 F.3d at 1460-61)). Therefore, neither of these constitutes a system of records covered by the Privacy Act.

These searches were reasonable and adequate, going well beyond answering whether the Offices maintained any Privacy Act systems of records and, if so, whether the Final and Addendum reports were contained therein.

## B.  Litigation Files

Ms. McCready argues that "Ms. Sokol averred that the OIG Reports might be in the litigation system of records maintained by the [OGC] but stated that she had not actually looked there." Pl.'s Facts ¶ 16a. The argument is misguided. Ms. Sokol declared that the OIG Reports presumably would have been in the litigation file related to this case, when it was last before the district court, but that the file was awaiting destruction at the Federal Records Center. In a supplemental declaration Ms. Sokoll further clarified that "[t]he Privacy Act litigation and the Equal Employment Opportunity complaints filed by Ms. Sheila McCready are included within [the system

of records covering litigation matters]." Supp. Decls., Sokoll Decl. ¶ 4.  There is no need to retrieve the old litigation file to correct the OIG Reports – if they are in the file and if Ms. McCready achieves an order to that effect – so that they can be returned to the Federal Records Center and destroyed.   Whether the OIG Reports are in these files as they face imminent destruction is irrelevant: if the files contain the reports, the offending documents will cease to exist and certainly have no way to impact Ms. McCready or her career now.

The reason Ms. McCready insists on knowing whether the Final and Addendum reports are in the litigation files maintained by the OGC is because she needs the OIG Reports to be in *some* system of records in order to qualify for a Privacy Act remedy.  Therefore, the Court must analyze whether litigation files – created only because this lawsuit was filed – should be treated as covered by the Privacy Act so that Ms. McCready could be entitled to the statute's remedies.

First, the litigation files constitute a system of records: the OGC maintains these files by case name and they are regularly retrieved by case name, in this instance including Ms. McCready's name.  However, that fact is not the end of the analysis.  As indicated earlier, the heart of Privacy Act protections is an individual's right to access any files contained in a system of records that are retrieved, in practice, by her name or identifier.  From that right of access, an individual can ascertain if records contain errors, can request corrections, and can sue to obtain disclosure and/or corrections.  But none of these rights pertains to litigation files: the statute specifies that "nothing in this section shall allow an individual access to any information compiled in reasonable anticipation of a civil action or proceeding."  5 U.S.C. § 552a(d)(5).  Without a right of access, the remaining Privacy Act rights fall as well.

This exclusion makes sense.  Ms. McCready has identified specific documents that

she believes violate the requirements of the Privacy Act. As relevant here, those are the Final and Addendum OIG reports. The only system of records in which those outdated documents remain is the litigation file established so that the agency could defend itself from her suit. The litigation file exists for that sole purpose: it is not a personnel or other file on which any determination might be made by the agency that could be adverse to Ms. McCready. The file did not exist before Ms. McCready sued, it was not relied upon by her as a basis for this suit, and it will be destroyed in the normal course of record destruction. The litigation file must contain the documents under contention because that is the only way counsel can properly evaluate their case and prepare/present a defense. One can imagine that everything in the file other than the OIG Reports and the Powell Memorandum would be privileged attorney work product and/or attorney-client communications.

The Court concludes that the OGC litigation files are a system of records but do not give rise to Privacy Act rights of access and correction or remedies.

## V.  CONCLUSION

The Defendant's motion for partial summary judgment on Counts VI, IX and X insofar as they relate to the alleged distribution of specific Inspector General audit reports beyond the OIG will be granted in part and denied in part. The record is insufficient for the Court to determine if there is an identifying descriptor in the WebCIMS system from which the location of the paper copies of the Final and Addendum OIG reports might be found; in this respect, the motion will be denied without prejudice. In all other respects, the motion will be granted. A memorializing order accompanies this Memorandum Opinion.

_____/s/_____
ROSEMARY M. COLLYER
United States District Judge

DATE: September 13, 2007